Our third case for argument this morning is Ferreyra against Barr. Good morning, your honors, and may it please the court. I'm attorney Daniel Tillman, representing the petitioner Franco Ferreyra, and he consolidated petitions 18-3021 relating to his habeas petition and 19-2055 regarding the agency proceedings where his application for relief was denied. The issues in these petitions are, one, whether Section 1187 of Title VIII of U.S. Code limits petitioners' available relief and removal proceedings, whether the agency incorrectly denied petitioners' applications for relief, whether the agency failed to follow its own regulations and committed legal error by assigning reconsideration to a single member of the board, and whether, regarding the other petition, whether the district court properly referred the habeas petition to this court. I'd like to begin with the agency proceedings regarding applications for relief. One of the main issues in this case is whether Section 1187 limits the availability of relief, in this case cancellation of removal for certain non-permanent residents by virtue of petitioner's manner of entry under the Visa Waiver Program. This case, essentially we're trying to see whether the facts in this case bring petitioner under the exception contemplated in bio of the Napolitano, specifically whether he made a known involuntary waiver of rights and whether that waiver caused him prejudice. As the petitioner was a child at time of entry with his parents, there is no indication that he was capable of making a known involuntary waiver, and so one of the primary issues in this case turns on prejudice on whether he was actually prejudiced by that waiver. Our position as addressed in the brief is that petitioner would have had other options to gain admission. There's no indication that he was otherwise admissible in light of his youth and family ties, so we do believe that that constitutes prejudice. And an additional note on prejudice, this was unfortunately not raised in the brief, but it should be considered that when it comes to relief, such as cancellation of removal for non-permanent residents, that relief turns on hardship to qualifying relatives of a petitioner. And certainly the prejudice that those individuals suffer as a result of his ineligibility for that relief should have some venue to be taken into account. Unfortunately, because those individuals are not parties to the litigation, there is no such opportunity. But as pertains to the petitioner himself, the prejudice that we allege took place here is that he was, in fact, denied other avenues to enter. It's a difficult situation, obviously, whenever a child is admitted. Sorry for interrupting you. It's Judge Scudder. I got two questions. One thing I'm confused about. You're talking about cancellation of removal. I didn't think cancellation of removal was even before us. I didn't think it had anything to do with this case. And the reason is because I thought that the plaintiff was, I'm sorry, your client, was precluded from seeking any form of relief in terms of cancellation of removal. In other words, all he could do was seek asylum. Why are we talking about cancellation of removal? That's correct, Your Honor. The application was pretermited and the relief was not discussed below. I only brought it up as a point. I want to go back to the first point. Is your point that as a matter of law, parents cannot execute the waiver in question here in any circumstance? You want us to hold that as a legal matter? Not under any circumstance, Your Honor, but I think that on a case-by-case basis, as the court is looking at whether a waiver is known or voluntary. So here we have an indication that your client's parents executed the waiver, correct? That is, yes, Your Honor. That's what the record appears to show. Although there is no signed waiver, but yes. Okay, and what evidence do you have that it was not, even assuming that that's before us in that kind of crystallized way, what evidence do you have that your client's parents did not do so in a knowing, involuntary way? Your Honor, we have no evidence of that, and the issue wasn't before the agency, so testimony on that would have never been heard. The petitioner, at the time that he was detained, did execute documents indicating that he was not essentially conceding that the waiver was executed. So that's what confuses me about the argument you're making. You've made two points. You've made one point about waiver that's not before us. You made another point about cancellation of removal that's not before us. The only issue that I see before us is the asylum application. Am I wrong about that? I don't mean to arbitrarily narrow this. I'm just trying to figure out, because your brief covers a lot of ground, and I'm trying to figure out what precisely is the question before us. Thank you, Your Honor. I will move on to asylum. Just one final thing regarding the waiver, if I may. We believe that he should have been allowed to apply for cancellation of removal, and the fact that he was a minor shows that he himself did not knowingly execute the waiver. Hold on. You should go to asylum. We already covered cancellation of removal. I think he's statutorily precluded. Thank you, Your Honor. Regarding the applications, it was asylum withholding of removal and relief under the Torture Convention. In light of the facts, the only relief that was really at issue was humanitarian asylum under HCFR 1208.13E1-3iB. This based on past persecution that he suffered as a child, which was unlikely to repeat itself due to the fact that he is now an adult, but where he would still face other serious harm upon return. The IJ denied petitioner's application on two grounds. The board only affirmed on the issue of nexus between the past persecution that he suffered and his membership in a particular social group relating to family. In doing so, our position is that the agency did not properly consider whether the petitioner's family membership was, in fact, one central reason for the abuse. If I may give an example, the way that the agency applied mixed motive analysis, considering individual characteristics of the abuser, is akin to saying that a prison guard who tortures a political detainee, if they are individually sadistic, that then that political detainee's detention is merely a means of access for that individual's personal tendencies, which would not be, I believe, a desirable result. In this case, the agency failed to recognize that in the case of a child and intrafamilial abuse, the access that the court and the board or opportunity that they turn to is inseparable from the family membership. This is the fact that the abuser in this case may have had, and obviously had, some perverse tendencies does not change the fact that but for the petitioner's membership in his family, that individual would not have had access and the opportunity to carry out the abuse that he did. There is nothing in the record suggesting that this is- Mr. Solomon, you have a minute and a half left. Thank you, Your Honors. I'd like to- essentially that's our position regarding the nexus argument that these two are indistinguishable and it was an improper application of mixed motive analysis to hold that it had to be one or the other in this case. Regarding the final points, whether the BIA failed to follow its own regulations in the assignment of the case, we feel that the board should have articulated the reasons that it felt that assignment to a panel was not appropriate. And regarding the transfer of the habeas petition to this court, there is overlap as far as the attacks on the underlying order, but the issue of custody, prolonged and in this case indefinite, is not moved because in the event that the petition is successful and petitioner returns to the United States, then that issue will be read for adjudication again. I thank the court for its time. Thank you, Mr. Tomon. Ms. Wright. Good morning, Your Honors. May it please the court. Jocelyn Wright on behalf of Respondent, the United States Attorney General. As you've already noted, there are two petitions for review before the court. The first is the petition for review that was transferred by the district court. It was transferred by the district court to the Seventh Circuit as a petition for review. And the government's position is that first petition for review, number 18-3021, is duplicative and moot, and therefore it should be dismissed. The second petition, 19-2055, is a petition for review from the agency's denial of asylum in asylum-only proceedings, and the government admits that that petition should be denied. Let me address first the petition for review number one. The petitioner admits that it isn't moot because he might be able to come back to the United States. But the district court, he doesn't challenge the fact that the district court properly transferred the petition for review to this court because it challenges the final removal order. And as this court has long held, as we explained in our brief, bond issues and custody issues relating to alien custody and agency proceedings are not a part of the petition for review. In fact, they're separate and collateral proceedings, and therefore they're not within the ambit of this court's jurisdiction over review petitions. So to the extent that he's challenging the detention custody issues in the first petition for review, those issues are moot because he has been since removed from the United States to Argentina. He never challenged the length of his detention. He only challenged the fact of his detention. And so that issue is already moot, and he has no reasonable expectation of being able to come back and be admitted under the VWP program because he is admittedly a previous violator of that program. And so the likelihood of his being taken into detention again as a VWP violator are very low, if not non-existent. And so for those reasons, we believe that that petition for review is moot. And in fact, petitioner never filed an appeal from the district court's decision to transfer rather than adjudicate the custody issues and behaviors petition. So for those reasons, petition for review number one should be denied as moot with respect to custody and duplicative with respect to the challenges to the removal order, because petition for review number two sufficiently covers his challenges to the VWP removal order itself. With respect to the waiver issue and his challenge because he was a minor at the time that he was admitted into the United States at age, I believe it was 12. In 2001, he suffers prejudice because he could not have knowingly and validly waived his right to contest removal on grounds other than asylum. The district court has held in bio that although it has to be a knowingly and voluntary waiver, he has to establish prejudice. And he hasn't established that required prejudice because the fact that he was a minor at the time that he was admitted into the United States, and he doesn't contest that his parents waived his rights for him. He doesn't he doesn't allege that the parents waiver of his rights was not knowingly or voluntary. And so the imputation of the parents waiver of his rights to him is appropriate under the law. The fact that he was a minor and couldn't do it himself is not itself an error that causes prejudice. It is simply a fact. So his real challenge is to his parents' decision to have him admitted under the VWP rather than to seek his admission into the United States under a regular tourist visa. But that can't form a basis for the prejudice because even if he were if he were not a minor at the time that he sought admission in 2001, he would be in the same position as the petitioner in bio. And this court explicitly held in bio that those aliens do not cannot show the required prejudice. Even if not, even if the waiver is not knowingly or voluntary, because they can always decline to waive their rights and instead seek admission under some other way, such as a tourist visa. But because petitioner appears to have no arguments before the court regarding the waiver issue, I'll move on to the asylum claim unless the court has any other questions on that ground. With respect to the asylum issue, which, as Judge Petter pointed out, is the only issue probably before the court, really. The Board of Immigration Appeals. Substantial evidence supports the Board of Immigration Appeals' denial on the basis that petitioner provided no nexus between the past harm that he alleged he suffered and any protected ground. To the extent that petitioner is arguing that this is a mixed motive case, that mixed motive analysis doesn't apply because the Board of Immigration Appeals here held that there was absolutely no nexus at all. And the reason for that is because his uncle, although he was a family member, petitioner has confused how with why. Petitioner was found, or was picked as a victim, was found because he was a member of the family, but that wasn't why he was picked as a victim. And motive goes to why. And motive is essential under the Supreme Court's decision in Elias Zacharias. And so because it's only that it was his access to petitioner, the how, that goes to whether or not he was a family member and not whether or not the uncle targeted him because he was a family member. And on account of his family membership, petitioner has failed as the Board held, has failed to tie the nexus together between the harm he suffered and any protected ground such as his family. And to the extent that he challenges the violation of the streamlining regulation, our position is set forth in our brief fully. This was a decision that's solely within the discretion of the Board member. There is no constitutional violation because it is a discretionary determination by the Board member itself. And he hasn't established any prejudice as to how his decision would have been different if a three-member panel had decided this case rather than the single Board member. Unless the court has any further questions, the government will submit based on the reasons in its brief. And we ask the petition for review. Number one, be dismissed and petitions for review. Number two, be denied. Thank you. Thank you, Ms. Wright. Mr. Tomon, you have 30 seconds left. Thank you, Your Honors. Regarding nexus, again, had petitioner not been a member of his family, there is no indication that he would have suffered persecution. This is one central reason why it happened. The immigration judge did find that he suffered past persecution. It is a question of nexus and we believe that the agency incorrectly applied the law. Thank you very much for your time. Thank you very much. The case is taken under advisement.